case is 192382 Sharifi v. United States. It is an appeal from a decision from the Court of Federal Claims. Now Ms. Gaines, you may begin. I'm sorry. Good morning, Your Honor. May it please the Court. Appellant contends that the lower court errs in dismissing the Although the court, in its opinion, accurately stated the standard of review. Ms. Gaines. Yes. This is Judge Wallach. I have a number of questions for you. Yes, Your Honor. How does the existence of a status of forces agreement between the United States and Afghanistan affect the lower court's determination? Well, that issue was decided in the favor of the plaintiff because the lower court indicated that it does not affect the proceeding of the plaintiff's situation. So because the lower court decided it, we don't look at it? Well, that issue wasn't raised by the defendant, but I'm not saying that you can't look at it. What does the SOFA provide about the government of Afghanistan providing land for bases? Well, that's one of the legal issues involved here because the land was still privately owned that the combat outpost millet was built on. Okay. Let me... On page 15 of the appendix, the Court of Federal Claims said the government has offered nothing suggesting how international law and international justice are implicated by the court ruling on a takings claim against the Soil. Suppose the claim involved the death of a US citizen fighting for Al Qaeda or fighting for the Taliban on foreign soil. Would his estate have a claim against the United States? In that situation, I would say no because the person voluntarily decided to fight for Al Qaeda. I'm talking about the underlying law. Do you have any thoughts on that? Well, I would say that once they... There would be certain legal implications in them deciding to fight for Al Qaeda and they could not bring an action against the United States legally. Okay. Okay. Counsel, I'm sorry. Go ahead, Judge Waller. On page 23 of the red brief, the government asserts that due to the threat of IEDs and an ongoing Taliban threat in the area, the US Army destroyed buildings containing bomb-making materials on the real property and then built an outpost millet on that property. Do you dispute those facts? Yes, in certain respects because the plaintiffs maintain that yes, there were buildings on his property. The buildings were not the ones shown by the defendant in its exhibit. Counsel, can I shift gears for a minute? So I understand that as I see it, you make a couple arguments. One is that it was inappropriate for the court to rule at the motion to dismiss stage on Mr. Shafi's ownership interest because there were too many factual disputes. But more pointedly, I think you're contending that the court's view of Afghan law is incorrect and that there are ways to establish ownership. Is that right? Somewhat, yes. Yes. Because certain of the requirements that the lower court indicated were actually enacted in 2008 and the plaintiff entered into an inheritance agreement with his siblings who all of whom were heirs in 2004. Are any of the requirements, any of the requirements that were listed by the Court of Federal Claims, is he able to establish that he satisfies any of them? Yes. Okay. So which document, which piece of evidence did he allege he could submit in support of his claim? I understand he argues that there are other ways to establish ownership that fall outside the bounds of the law. But with respect to what the Court of Claims spelled out as to what the law requires, did he allege that he could establish any one of those? Well, eventually he did. The inheritance agreement was registered, although it was after the statute had been enacted. But at the time that the inheritance agreement was executed in 2004, that requirement was not there. There's a list of things that the Court of Federal Claims said had to be established. There are different ways to establish ownership under Afghan law. And the Court gave a list of them. Seven types of documents. Yes. All right. And which one of them? All right. Documents of a legal court. There's seven different things. Yes. Let's see. Our position, well, I guess number six. Registered title documents? Yes. And because they also attached a diagram of the plot to the inheritance agreement. So you're saying that those constitute title documents? Yes. And that they were registered? Yes. Not in 2004 when they were executed because there was no requirement. This is Judge Wallach. On page 24 of the red brief, the government asserts that you did not contest the determination made by the government's expert concerning Afghan law. Do you have any evidence in the record to contest the validity of that declaration? I certainly did because I offered the... And I cited in my brief, I offered the... You had some general... The rule of law, I offered the rule of law in Afghanistan as an exhaustive study had been provided by the United States agency. And they did an exhaustive study of the entire country. And they recognized as the lower court recognized that informal... Liz, go ahead. You can finish the answer. The Afghanistan rule of law project by the US aid... Well, the agency in international development did an exhaustive study and they recognized that because of the crisis in which Afghanistan had been in for years following including the occupancy by Russia, the occupancy by the Taliban, that the people used the customary informal procedures rather than try to access things where there was no... What year was that? ...infrastructure? What year was that AID study done? 2005. Right. Which is say 15 years ago. Are you... Do you agree that Afghanistan has three overlapping types of law, civil law, Sharia law, and customary law? Yes. Do you agree that what the expert from the government laid out was the civil law analysis of the transfer of land? Yes. And he did not... He did not... Excuse me. Do you have any reason to doubt that the civil law governing Afghanistan's transfer of land is applicable in that province? Currently, yes, but not as... Currently, yes. You have reason to doubt? No. Currently, I agree that there's... It does apply now, currently, to that region. And when did it begin to apply? Do you know? Well, I know some of the statutes were not enacted until 2008. Correct. And we're talking about 2010. But at the time, the inheritance agreement was entered into was 2004. When the plaintiff entered into the inheritance agreement with his siblings, the other heirs. Does that answer your question, Judge Wallach? As much as it's going to, yes. Thank you. Okay. All right. Ms. Gaines, we'll save the remainder of your time for rebuttal. Okay. Mr. Schmelzer? Good morning, Your Honors. May it please the Court, this is John Schmelzer for the United States. Your Honors, we submit that the Court of Federal Claims judgment should be affirmed for two sets of reasons. First, as the Court of Federal Claims found, Mr. Sharifi did not proffer sufficient competent evidence to establish his ownership under... Mr. Schmelzer? Yes, Judge Wallach? Please don't talk when I talk, or any judge talks, okay? I know this is difficult because of the phone, but please listen. Let me ask you a couple of questions. One is how the existence of a SOFA, a Status of Forces Agreement, affects the lower court's determination. Your Honor, we did not brief specifically the Status of Forces Agreement, and I cannot answer whether there are any particular provisions in that agreement that impact the court's determination. What I can say, though, is that the United States' presence in Afghanistan, the Army's presence, was pursuant to a U.N. Security Council resolution. We were there as part of an international security assistance force, and with the consent... Question. There is an ISAF SOFA as well, is there not? I'm not sure, Your Honor. We did not brief that. Okay. Here's my other question. You want us to affirm, but I find extraordinarily problematic the court below's findings relating to the question of whether the government could be held liable for an extraterritorial taking of private property under these circumstances, that is, in a combat zone. I want you to... We agree, Judge Wallach. We don't think that the plaintiff stated a claim for relief because of that reason, and as we stated in the brief, that this was a combat outpost, and the Army was there at a time when they were fighting a counterinsurgency by the Taliban, and under the enemy property doctrine, the... Right, right. So you don't want us to affirm on that, do you? I would be happy for you to affirm on that, Your Honor. As I was saying at the opening, you can affirm on the grounds that the court of federal claims found that the plaintiff did not assert enough evidence to show property right under Afghan law, but we would prefer that the court did not leave it open, that there was a takings claim in this circumstance, because for the reasons that... Didn't the court just say it was too early in the proceedings to make a piece of evidence that the government tried to submit that aren't appropriate at the motion to dismiss stage? Well, I don't think the court referenced any specific evidence. The court did suggest that it wasn't inappropriate at this time because of the... What the court was applying was the substantial and direct involvement test from the cases of this court and said that they're potentially, under that standard, the United States could be found liable. We think that's an error, that that's not the right analysis to apply here. First, because the enemy property doctrine applies, but secondly, even if it doesn't, that the circumstances here are on all fours with the court's determination and standard vacuum, where even in a post-hostilities, post-surrender context, where you had allied forces occupying property under an agreement that Japan was to provide what the forces needed, that that's not a situation where a taking can be found, because any taking in that context is a taking by, under the sovereignty of the territorial sovereign. There, in that case, Japan. In this case, we would submit that any, even if the enemy property doctrine did not apply, that any taking would be by Afghanistan to provide what's necessary for the United States Army to assist. Did you present this precise argument to the Court of Federal Claims? Under standard vacuum, yes, we did. The argument we did not fully brief below was the enemy property doctrine. But with respect to standard vacuum, yes, we briefed that argument. This is Judge Toronto. Can I ask, I guess, I have two questions. One is about the ownership issue, and then the other is about the non-enemy property version of your argument about the limitation of the Just Compensation Clause. Let me start with the ownership. I think Ms. Gaines said in her argument that, although I'm not sure this is in the blue brief, but I think she said as to option number six, registered title documents that the claims court identified as a legitimate way of establishing ownership, that the plaintiff here did, in fact, allege that he had a registered title document. If I understood that right, can you comment on that? Yeah, what I understand Ms. Gaines to be saying is what was said in the brief, that is, that the 2004 inheritance agreement was effectively registered with the government. What we would submit, though, is that that characterization of what happened is incorrect. What is in the record is that Sharifi sent the inheritance agreement or provided it to the district governor, and the district governor issued a statement verifying that it was the particular property. What we counter to that is that the district governor is not competent under Afghan civil law to adjudicate property rights or to adjudicate inheritance rights. I don't think you're directly addressing Judge Toronto's question because the question is, is the inheritance document that she's referring to, does that, is that the same as alleging a registered title document? No. I'm sorry if I got off track. What I was focusing on is what she had said in her brief, which is the sending of this inheritance agreement into the district governor was somehow a registration. What I'm simply a request to an official who is not the land registry official, right, and is not an official that can adjudicate land rights. The document itself is not a registered document. It's not one of the documents that an Afghan court would accept as competent evidence of ownership. Well, if I understood the Court of Federal Claims analysis, if the inheritance, the court ultimately determined that the inheritance issues were irrelevant because there was no registered document, there's nothing that documented his father's ownership. Is that right? In other words, there's something that showed there was something to inherit. Yeah, that's right. I mean, there are several steps in this sort of the chain of title, but what our experts said is that if you have an inheritance agreement, you have to have attached to that, right, the deed. And if there's not a deed, you need one of these other competent pieces of evidence that an Afghan court would accept. I thought I heard Ms. Gaines say, and maybe I misheard this, that at the time of the inheritance agreement, the title document was not registered, but it came to be registered later. Right. And that's what I was talking about. The came to be registered later was sending it to the district governor in 2016, I think, after the complaint was filed or sometime therein to get the district governor to confirm Sharifi's ownership. And what I'm saying to you is that the district governor is not a land registry office. The district government, according to our expert on Afghan law, does not have the authority to adjudicate land rights, and he's not the keeper of the land records. And there's official Afghan government records. Can I turn to the kind of legal doctrinal point, not the enemy property grounds, which you present, I think, quite correctly, as a separate ground under your argument, number two, but under 2B. As I understand it, you make an argument that the United States, indeed, any sovereign cannot be liable under the just compensation clause for taking property outside that sovereign's sovereign control. And I guess I find that when you take away the enemy property and military aspect, a somewhat surprising proposition. If Georgia took some property in Tennessee, is there no taking claim against Georgia? Well, that would be an unusual circumstance. I mean, it's hard to imagine how Georgia would have the legal authority under Georgia law to take any property in Tennessee. Right. But that, I guess, gets to the point that, I guess, struck me as the basis of what I basically thought was a confusion in your argument. It probably is quite true that the authority of a sovereign to exercise eminent domain power is limited to land within the state. And that translates into the proposition that if the acting government has authority, not eminent domain authority, but commerce clause authority, military authority, foreign affairs authority, to go and take some land, why would the just compensation clause, which doesn't refer to eminent domain, not present a constraint on that? Well, I mean, I think it would, Your Honor. But I mean, the question is what foreign affairs authority or commerce clause authority gives the United States Army the legal authority to take private property within the confines of another territory, another nation, another territorial sovereign? Do you think that you think the United States was acting ultra-virus in building? Oh, no. But that's the broader point. The point that we're making in the brief is not that the United States can never be liable for taking for actions outside the territorial jurisdiction of the United States. The case law is to the contrary. What we're arguing... No, I guess I had, maybe I misread it. I thought that's exactly what that piece of your brief said. Well, what we're arguing is that the context of our occupation or possession of private property in a foreign country is important. And ordinarily, there are two basic ways that happens, right? One is if we're seizing property in the course of warfare, or the second ordinary lawful way it happens is with the consent of the nation where we're at. There are two lawful ways, right? And setting aside ultra-virus actions that may occur, there are two lawful ways for the U.S. Army to occupy foreign soil. One is pursuant to the war powers, and the other is pursuant to the consent of the government. And what we say here, and consistent with the standard vacuum case, is we're there as part of an international security assistance force, assisting the warfare and struggle. And in that context, the United States is not exercising its power of eminent domain. It is relying on Afghanistan's power of eminent domain where it is necessary to fulfill its mission under the U.N. Security Council resolution. Again, don't these turn on factual questions? I mean, I guess we all know that we're in Afghanistan. We're in Afghanistan or were in Afghanistan under a U.N. Security Council resolution. That's a matter of law. We're there as a matter of an international security assistance force. That's a matter of law. There's no dispute that this is simply a combat outpost, and it's part of our mission. There's no dispute that we were doing it in concert with the U.N. Security Council. It's very difficult for me to conceive of any particular fact that would change the notion that we are there as part of an international security assistance force with the consent of the sovereign government to help them clear out counterinsurgency by the Taliban. And in that context, if our troops need to be housed, even in a non-combat, non-enemy property sort of circumstance, the proper way to view it is that the taking authority is the authority of the sovereign government of Afghanistan, because we're not there acting as a matter of our eminent domain. And if you look at the other cases where the United States has been held liable for taking... Just one last question, Counsel. All those facts that you just recited, are they in the complaint? As far as the legal status with respect to the international force and the resolution, quite frankly, I don't recall whether they're in the complaint. They are matters of law that are subject to this court's ability to determine. Are you saying the Court of Federal Claims should have taken judicial notice of certain facts? Well, again, I think the Security Council resolution can be considered a legal matter, not a fact. But sure, they were subject to notice. I don't think they're disputed here. Did you ask the Court of Federal Claims to take judicial notice of those facts? I believe they're in the court's decision. This is Judge Wallach. Speaking of procedural things, procedural, why shouldn't we treat this as a Rule 56 conversion? It was a motion to dismiss, but it was supported by external fact statements, specifically on the government's part, the affidavit by its expert on Afghan law. And it seems to me that the court below made a determination based on that. We did say that the court should treat specifically the property ownership question as under a conversion, under a Rule 56 summary explain what the court may consider when analyzing foreign law. It actually allows consideration of evidence without a conversion, doesn't it? Your Honor, if you can do it without considering it in a summary judgment, that's fine. I mean, Rule 44.1. Right. There were additional proffers of maps that the plaintiff had presented in evidence that the plaintiff had presented, the head of the Kochi village verifying a circle on a map, his opinion that it belonged to Sharifi, that were not proffers on the law. But yes, if it's just focusing on proffers on the law, sure, treat it as a 12B6. Okay. All right. Anything else, Judge Wallach or Judge Toronto? Not for me. Not for me either. Thank you. Thank you, counsel. Thank you, Your Honor. James? Yes. This was a motion to dismiss the complaint. And the standard of review requires the lower court to accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. However, that was not done. In essence, the lower court acted as the prior of that and... Let me just ask you this. Rule 44.1 says that the court may consider evidence, a testimony and other materials that would not be even admissible under the Federal Rules of Evidence. And it still is to be treated as a pure question of law in making the determination as to what the law applies. So why wouldn't we just believe that what the court was doing is determining whether your client adequately stated a claim under Afghan law? Because we were not proceeding under Afghan law. We were proceeding under the Tucker Act and the U.S. Constitution. Well, you have to have ownership, right? Excuse me? In any taking context, the establishment of ownership is governed by the local law where property exists, right? Yes. So, for instance, if you were, you know, alleging that they took your property in the state of Ohio, you would have to look at Ohio law to determine the property ownership. And here, if you're alleging that property was taken in Afghanistan, you have to establish ownership under Afghan law, correct? Correct, to a certain extent. Under the claimant was a beneficial owner whether or not there was a deed present. Because the original owner was deceased. The grandfather who originally acquired the property was deceased. So the decedent certainly didn't own the property. It was the heirs. Whether or not the document was recorded, they still had an interest in the property as beneficial owners. And that would give them the right to proceed. Okay. Thank you, counsel. The case will be submitted.